WESTERN UNION TELEGRAPH CO. v. HOLCOMB. (No. 8104.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 27, 1915. Rehearing Denied April 3, 1915.)

1. APPEAL AND ERROR ☞544 — FAILURE TO TAKE BILL OF EXCEPTIONS.

Where appellant failed to take a bill of exceptions as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 2061, providing that the ruling of the court in giving, refusing, or qualifying instructions shall be regarded as approved, unless excepted to and exceptions shown by bill of exceptions, assignments of error as to the refusal of instructions will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412–2415, 2417–2420, 2422–2426, 2478, 2479; Dec. Dig. ☞544.]

2. TELEGRAPHS AND TELEPHONES ☞38—DELAY IN DELIVERING MESSAGE—MISTAKE IN NAME OF ADDRESSEE.

In an action against a telegraph company for failing to deliver a message, informing the addressee that his brother was dying, in time for the addressee to attend the funeral, it was the telegraph company's duty, notwithstanding that there was a mistake in the addressee's name, to exercise ordinary diligence to deliver the message to the proper party, regardless of whether such mistake proximately contributed to the delay.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. ☞38.]

3. TELEGRAPHS AND TELEPHONES ☞38—DELAY IN DELIVERING MESSAGE—DIRECTIONS AS TO DELIVERY.

Where the sending agent of a telegraph company had received specific instructions as to how the addressee of a message could be reached by telephone, but negligently failed to promptly transmit such information, and the receiving agent negligently failed to deliver the message after such directions had been received by him, a finding that the delay was caused by the negligent acts of both agents was warranted, notwithstanding a mistake in the addressee's name.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. ☞38.]

4. TELEGRAPHS AND TELEPHONES ☞38—DELAY IN DELIVERING MESSAGE—DEFENSES—FEE FOR DELIVERY.

It was no defense to an action for negligent delay in delivering a telegram, stating that the addressee's brother was dying, that the contract with the telegraph company stipulated that an extra fee would be charged for delivering the message beyond its free delivery limits, and that no such fee was paid, where the message was forwarded from the receiving office to the addressee over the telephone line of another company; the fee for such delivery being paid to that company by the addressee himself.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. ☞38.]

5. TELEGRAPHS AND TELEPHONES ☞71—DELAY IN DELIVERY—DAMAGES.

A verdict of $1,000 for delaying the delivery of a telegram stating that the addressee's brother was dying, and thereby preventing him from attending the funeral, was excessive.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 74; Dec. Dig. ☞71.]

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by Fayette Holcomb against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Judgment reformed and affirmed.

Arch Grinnan, of Brownwood, for appellant. Smith & Palmer, of Comanche, for appellee.

DUNKLIN, J. The disposition of a former appeal in this case is shown in 152 S. W. p. 190. The suit was instituted by Fayette Holcomb against the Western Union Telegraph Company to recover damages for the alleged negligent delay in the delivery of a telegram intended for him and reading as follows:

"Mt. Pleasant, Texas. March 18, 1911. "Fate Hawkins, De Leon, Texas. Brother Jess sick. No chance for him. Come at once. "[Signed] Lena Raney."

Lena Raney was plaintiff's sister, and she and her brother, Jess Holcomb, lived in the country about nine miles from Mt. Pleasant. Plaintiff resided in the country near Downing, a small town about eight miles from De Leon. A telephone line connected De Leon and Downing, and a telephone line ran from Downing to plaintiff's residence. A person at De Leon could talk to plaintiff at his residence over the telephone, but in order to do so it was necessary to call for him at the Downing Exchange, from which station direct connection could be made between plaintiff's residence and De Leon. Jess Holcomb died at 4 o'clock on the afternoon of March 19th, and was buried near his home at 4 o'clock on the afternoon of March 20th. The telegram was delivered to plaintiff at his home by telephone from defendant's office at De Leon on the morning of March 20th, too late to enable him to attend the burial. Among other defenses the mistake in plaintiff's address as Fate Hawkins, instead of Fayette Holcomb, was alleged as the cause of the delay in delivering the message. Melvin Tigert, at the request of Lena Raney, went to defendant's office at Mt. Pleasant to have the message sent. At Tigert's request W. S. Prestridge, defendant's agent at Mt. Pleasant, wrote out the message. Tigert testified that he saw the same written, but claims that he gave the name of the addressee as Holcomb instead of Hawkins, and thought it was correctly addressed. As held by us upon the former appeal, the mistake made by Prestridge, if it was his mistake and if he was negligent in making it, was not chargeable to the defendant, and the error on the former trial in submitting the alleged negligence of Prestridge in making the

mistake as a ground of recovery was avoided on the last trial.

Tigert testified that at the time the message was delivered to the agent at Mt. Pleasant for transmission, he informed that agent that the addressee lived in the country near Downing, about eight miles from De Leon; that he had a telephone reaching his residence, over which he could be called from De Leon, and, according to other evidence, the message was in fact delivered to plaintiff in the form written by Prestridge, notwithstanding the mistake in the address. According to other evidence, a service message was sent to De Leon on the 19th of March by the agent at Mt. Pleasant giving the information that the addressee's residence was near Downing, and that there was a telephone at his residence, but this service message did not correct the mistake in the address. According to the testimony of the agent at De Leon, immediately upon the receipt of the message on March 18th, he made diligent effort to locate Fate Hawkins by inquiry among citizens of De Leon, but was unable to find any one who knew of a man by that name. He further testified that after receiving the service message on the 19th of March, he tried to call up the Downing telephone office, but was unable to do so, as that day was Sunday and the telephone office at Downing was then closed. Early the following morning, which was Monday, March 20th, he did call for Fate Hawkins over the telephone at Downing, and in reply to this call was immediately placed in connection with plaintiff at his residence, and then read the message to the plaintiff, who at once knew that he was the addressee intended.

According to the testimony of the plaintiff, if he had received the message, even as late as Sunday afternoon of March 19th, he could and would have gone to Mt. Pleasant, thence to the home of his brother, Jess Holcomb, and would have reached that destination in time to attend the burial, but that when he received the message on Monday morning, it was then too late for him to do so.

[1] The first four assignments of error are addressed to the refusal of special instructions requested by appellant. The record fails to show that appellant took any bills of exceptions to the refusal of the instructions requested, as required by article 2061, Vernon's Sayles' Tex. Civ. Stat., which was enacted by the Thirty-Third Legislature of 1913 (chapter 59). It is therein provided that the ruling of the court in giving, refusing, or qualifying instructions to the jury shall be regarded as approved unless excepted to and such exceptions shown by proper bills of exception. The failure of appellant to comply with this statute is made the basis of objections by appellee to a consideration of the four assignments mentioned above, and such objections must be sustained. Cleburne St. Ry. Co. v. Barnes, 168 S. W. 991;

Stephenville, North & South Texas Ry. Co. v. Wheat (No. 8015) 173 S. W. 974, by this court, not yet officially published.

Furthermore many of the questions presented by these assignments ,were decided adversely to appellant on the former appeal.

[2] By another assignment appellant insists that it is shown by undisputed evidence that its agent at Mt. Pleasant did not know the message was sent for the benefit of plaintiff. This contention is predicated upon the mistake in the name of the addressee. As held by us on the former appeal, notwithstanding the mistake in the name of the addressee, it was the duty of the defendant to exercise ordinary diligence to deliver the same to the proper party. The agent at Mt. Pleasant himself testified that Melvin Tigert told him, at the time the message was deposited in that office for transmission, that the addressee had a telephone connection with De Leon and lived about eight miles from De Leon, but he did not communicate that information to the De Leon office until Sunday, March 19th, when he sent a service message. The evidence and facts recited already were sufficient to support the finding by the jury of negligence in failing to transmit and deliver the message in time to enable the plaintiff to make the trip necessary to attend the burial of his brother.

[3] Appellant insists, further, that the evidence conclusively shows that the mistake in the name of the addressee proximately contributed to the delay in delivering the message, and by reason thereof the court erred in failing to grant a new trial. This assignment is overruled, in view of the authorities cited on the former appeal, to the effect that, notwithstanding a mistake in the name of the addressee, the telegraph company owes the duty to exercise ordinary care to deliver the same to the proper person, and a failure to exercise such diligence is actionable. Furthermore, according to Tigert's testimony, specific instructions were given to the Mt. Pleasant agent relative to how the addressee could be reached by telephone; and, according to the undisputed evidence, as soon as the De Leon agent resorted to that method, he was promptly put in communication with the plaintiff. Under such proof the jury were warranted in finding that the real cause of the delay in delivering the message was the negligent failure of the Mt. Pleasant agent to communicate to the De Leon office the information, which Tigert testified he gave Prestridge and noted above. Further, the evidence was sufficient to support a finding that the De Leon agent, after receiving the service message on Sunday, March 19th, to the effect that the addressee lived near Downing and could be reached by telephone, was guilty of negligence in not delivering the message on that date, and in time to have enabled the plaintiff to reach his brother's home before the burial.

[4] By another assignment it is insisted that, as the telegram contained a printed stipulation on the back thereof, which was expressly made a part of the defendant's contract with the sender, that for the delivery of the message beyond its free delivery limits an extra fee would be charged, and that in case the message was forwarded over the lines of any other company in order to reach its destination the sending company would do so as the agent of the sender, and as no extra fee was paid to send the message, and as the charge by the telephone company for the service of its lines in delivering the message from the De Leon office was 25 cents, no liability was shown on the part of the defendant. The undisputed proof shows that Melvin Tigert paid to the agent at Mt. Pleasant 40 cents, the fee that was charged, and that no extra fee was demanded for delivery at plaintiff's residence, which at the time that agent knew was some eight miles from De Leon. The record further shows that the telephone charge of 25 cents for transmitting the message to plaintiff over the telephone from the office at De Leon was paid by the plaintiff, and not by the defendant. The question here presented was decided adversely to appellant on the former appeal, and we adhere to that ruling upon the authorities then cited.

[5] By another assignment it is insisted that the judgment, which was for the sum of $1,000, was excessive. According to plaintiff's testimony, he moved from Titus county to Comanche county in the year 1904. During the time plaintiff lived in Titus county, Jess Holcomb, his brother, lived with him until the latter married, and then lived about a mile and a half from plaintiff's residence. Plaintiff further testified:

"I suppose Jess had been married about a year and a half when I left Titus county. No; Jess was not my youngest brother. Jess was 27 years old when he died. I regarded my brother Jess very highly as a brother. He and I were always very friendly. It had been something like 4 years at the time my brother died since I had seen him. * * * When I found out I could not see my brother in his lifetime, and then could not even attend his funeral, I could hardly describe my feelings. I felt mighty bad, and was hurt badly over it."

He further testified that he made no effort to have the burial postponed in order to enable him to attend the funeral; that he could have taken the train on Monday afternoon and reached his brother's home the following morning at about 4:40 o'clock; that his brother did not have any one to write him of his illness; that he had never been to Mt. Pleasant since his brother's death.

We recognize the rule that the amount of damages to be awarded in such cases as this is to be determined by the jury, and that the verdict will not be disturbed unless clearly excessive. Further, we are not unmindful of the rule that the facts of each case must be the guide in determining the amount of damages to be awarded. But we are of the opinion that the facts detailed by the plaintiff himself clearly do not warrant the amount of damages awarded. Accordingly, the assignment of error now under discussion is sustained, and for that error the judgment will be reversed, and the cause remanded, unless appellee shall, within 10 days from the date of this decision, file a remittitur of $500. If such remittitur is filed, then the judgment will be reformed and affirmed for that amount.

---

&#8658;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

